UNITED STATES of America,
Plaintiff–Appellee,

v.

Felipe MARTINEZ–NAVA and Jose
Cepeda–Cabada,
Defendants–Appellants.

Nos. 87–1106, 87–1107.

United States Court of Appeals,
Tenth Circuit.

Jan. 27, 1988.

Albert B. Lassen of Lassen, Combs and Kelly, Albuquerque, N.M., for defendant-appellant Jose Cepeda–Cabada.

Robert J. Gorence, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the briefs), Albuquerque, N.M., for plaintiff-appellee.

Before LOGAN, ANDERSON, and TACHA, Circuit Judges.

LOGAN, Circuit Judge.

Defendants Jose Cepeda–Cabada (Cepeda) and Felipe Martinez–Nava (Martinez) appeal their convictions for transporting and harboring illegal aliens, in violation of 8 U.S.C. § 1324(a)(2) and (3), as those subsections read before amendment on November 2, 1986, and for aiding and abetting, in violation of 18 U.S.C. § 2. Jointly, defendants argue that the district court (1) wrongly excluded veniremen who lived a substantial distance from the courthouse and (2) gave an improper supplemental instruction to the jury during deliberations. Individually, Cepeda argues that the district court admitted testimony of a prosecution witness in contravention of the court's omnibus pretrial order. Martinez asserts that a mistrial was warranted on two grounds: (1) the prosecutor's reference in opening statement to a codefendant's plea of guilty to the same charges pending against Martinez; and (2) the admission of testimony concerning Martinez' prior transportation of illegal aliens. We reject all of these contentions.

## I

The district court excused five veniremen from the jury panel, all of whom lived about 200 miles from the Santa Fe courthouse, after noting that the schedules of the court and of Martinez' counsel necessitated that the trial take place intermittently over the span of several days, and that the onset of winter made travel somewhat dangerous. The excuse of these veniremen is challenged on two grounds.

First, Cepeda challenges the district court's dismissal of two who were Indians, asserting that the resulting racial imba-

Peter Schoenburg, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant Felipe Martinez–Nava.

lance required constitutional equal protection inquiry under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson,* however, involved prosecutorial use of peremptory challenges that had an adverse impact on the jury's racial makeup. In this case, the *court* excused the prospective Indian jurors.[1] And even were we to extend the rationale of *Batson* to the district court's action, it gave a neutral explanation—travel distance and likely inclement weather—sufficient to defeat Cepeda's equal protection claim. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723.

■ Defendants next claim that the court violated the Federal Jury Selection & Service Act, 28 U.S.C. §§ 1861–1877, which requires each district court to devise and implement a plan for random selection of grand and petit juries. *Id.* § 1863(a). Defendants argue that the refusal to seat the distant jurors deviated from the plan for the District Court of New Mexico, thereby necessitating a new trial. Defendants, however, have failed to meet the procedural requirements of the Act to preserve the statutory claims.

Section 1867(a) sets the time limits and procedure for filing a claim under the Act.

"In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury."

The motion must contain a "sworn statement of facts which, if true, would constitute a substantial failure to comply" with the Act. *Id.* § 1867(d). Section 1867(e) further provides:

"The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title."

If a party fails to comply with the statutory procedures, a court may not hear the claim. *United States v. Cooper,* 733 F.2d 1360, 1366 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984).

Neither defendant filed a timely motion, together with a sworn statement of facts, as required under § 1867(d). Their oral objections do not suffice. We therefore conclude that defendants have not preserved their statutory challenges.

Treating defendants' objection as a general argument that the district court abused its discretion in excusing the jurors, we also find no error. Defendants provide no specific examples of how the district court abused its discretion. Here, because of special circumstances, the district court sought to save the prospective jurors substantial travel at a time of year when inclement weather was likely. The problem of dangerous driving was exacerbated by the probability that the trial would be conducted intermittently over several days, in part because of the previous commitments made by Martinez' counsel. Defendants' speculative argument that the district court should not have excused the prospective jurors does not suggest an abuse of discretion. *See United States v. Mason,* 440 F.2d 1293, 1298 (10th Cir.), *cert. denied,* 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971).

## II

Defendants also challenge a supplemental instruction given in answer to an inquiry from the deliberating jury. The need for this supplemental instruction arose because of a difference in wording between the first two counts in the indictment and the district court's original instructions. The indictment charged that defendants

---

1. Here the government used a peremptory challenge to remove one of the remaining Indians from the panel. Cepeda, however, does not object to the government's use of its peremptory challenges.

"knowingly did transport by vehicle from El Paso, Texas, to Albuquerque, New Mexico, ... an alien not duly admitted by an immigration officer and not lawfully entitled to enter and reside within the United States...." I R. 1 at 1–2. The original instruction did not refer to these specific locations, but required the prosecutor to prove "that the defendant transported or moved or attempted to transport or move the alleged alien...." VII R. 712–13. When faced with this difference, the jury asked the district judge whether transportation *within* Albuquerque fit the indictment's allegation of transportation from El Paso to Albuquerque.[2] Over defendants' objection, the district judge gave the following supplemental instruction:

> "Counts I and II of the indictment charge that defendants 'knowingly did transport by vehicle from El Paso, Texas to Albuquerque, New Mexico' certain alleged aliens. You're instructed that any transportation between points in El Paso and points in Albuquerque or between points within El Paso or between points within Albuquerque is comprehended within the language of the indictment quoted above."

VIII R. 731.

■ Defendants first assert that the supplemental instructions improperly favored the prosecution and thus should have been balanced by repeating instructions favorable to the defense. We do not agree. When a jury expresses difficulty with potentially conflicting instructions, the trial court should clear away the difficulty "with concrete accuracy." *United States v. Walker,* 557 F.2d 741, 746 (10th Cir.1977) (quoting *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). The district court explained in clear detail the answer to the jury's query, and defendants do not seriously argue that the court misstated the law. Further, since the instruction only defined the language of the indictment, it did not improperly favor the prosecution and thus did not necessitate the restatement of instructions

favorable to the defense. *See United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982) (supplemental instruction defining possession not favorable to either side; court had no duty to reinstruct on issues "favorable" to defendant), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983). The district court properly exercised its discretion to rectify the jury's confusion.

■ Defendants also argue that the supplemental instruction impermissibly expanded the indictment beyond the facts presented to the grand jury and thereby violated their Fifth Amendment rights. The Fifth Amendment guarantees that a defendant may not be tried on charges not contained in the indictment. *United States v. Miller,* 471 U.S. 130, 142–43, 105 S.Ct. 1811, 1818–19, 85 L.Ed.2d 99 (1985); *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *Ex parte Bain,* 121 U.S. 1, 8–9, 7 S.Ct. 781, 785, 30 L.Ed. 849, 852 (1887). We hold, however, that the supplemental instruction did not impermissibly expand the indictment. The crux of this aspect of the charge against defendants is that they knowingly transported illegal aliens within the United States. That this transportation occurred within Albuquerque, rather than between El Paso and Albuquerque, merely represents further evidentiary details which the indictment need not state. *Mims v. United States,* 332 F.2d 944, 946 (10th Cir.), *cert. denied,* 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964); *United States v. Radetsky,* 535 F.2d 556, 565 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976). As the Supreme Court recently noted, "A part of the indictment unnecessary to and independent from the allegations of the offense proved may normally be treated as a 'useless averment' that 'may be ignored.'" *Miller,* 471 U.S. at 136, 105 S.Ct. at 1815 (quoting *Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1927)). This sharpening of detail concerning where the trans-

---

**2.** The jury's inquiry stated: "Count I and Count II. Does transportation from El Paso to Albuquerque include transportation within Albuquerque? i.e., does the trip from the Townhouse Motel to 901 Seventh fall within this count?" VIII R. 727.

portation occurred also does not constitute a change in theory from that which the grand jury reviewed. *See United States v. Green,* 797 F.2d 855, 857–58 (10th Cir. 1986).

■ Finally, defendants point out that the jury's inquiry suggested that defendants were convicted for their acts in Albuquerque alone, whereas the indictment referred to events which occurred between El Paso and Albuquerque. We do not consider the jury's finding to be outside the scope of the indictment. The indictment sufficiently stated the location of the offense to allow defendants to prepare their defense. *Cf. United States v. Bujese,* 371 F.2d 120, 124 (3d Cir.1967) (indictment alleging commission of crime within jurisdiction establishes requisite certainty of place of commission).

### III

■ Cepeda also argues that the district court abused its discretion by admitting certain testimony of Veronica Careveo. Specifically, Cepeda asserts that the government agreed in an omnibus pretrial statement to disclose all statements which Cepeda made to third parties,[3] but Careveo was allowed to testify about a statement made by Cepeda to her which the government had not disclosed.

Before the jury, Careveo testified that Cepeda and Martinez accompanied a group of illegal aliens to her home. Throughout this testimony, the court expressly instructed the prosecutor not to elicit from the witness what defendants said to her, and instructed the jurors that they were not to speculate as to what might have been said. In the course of this testimony, the following colloquy occurred:

"Q. [By Prosecutor] Mrs. Careveo, did you let the group in so that you could give them some food and let them use your restroom facilities?
A. Un–huh. Yes, sir.
Q. What happened after that?
A. Well, *like I had told Jose [Cepeda] before he left,* that I could only take care of them for a little while.
Mr. Lassen. Objection again...."

V R. 508 (emphasis added). The trial court overruled this objection.

Although the emphasized testimony of Careveo implies that Cepeda conversed with her, it does not disclose any of Cepeda's comments. Careveo testified to what she told Cepeda, not what Cepeda told her. Thus, this testimony did not violate the omnibus pretrial statement. Further, since the jury had been twice warned not to speculate as to the content of conversations which might have occurred between Cepeda, Martinez and Careveo, we have no reason to think that the jury violated those instructions in interpreting the testimony. We find no abuse of discretion as Careveo's testimony did not contain an improper undisclosed statement by Cepeda.

### IV

■ Martinez asserts that the prosecutor's reference in his opening statement to the expected testimony of Jose Bolivar–Delgadillo (Bolivar) constitutes prejudicial prosecutorial misconduct and necessitates a new trial. During opening statement, the prosecutor informed the jury that Bolivar had been indicted with Martinez but had pleaded guilty. Martinez promptly objected and moved for a mistrial, and the district court reserved ruling on the objection until the end of the prosecutor's opening statement. Following Cepeda's counsel's opening statement, which also referred to Bolivar and his guilty plea, the district court gave an extensive cautionary instruction concerning the prosecutor's statement[4] and asked each juror individually

---

3. This omnibus statement contained the government's promise to reveal to the defense all statements made by defendants to third persons. Although this promise imposes greater disclosure obligations on the prosecution than are required by Fed.R.Crim.P. 16, the government does not argue that it may violate the promise.

4. This instruction stated in part:
    "Now, Mr. Gorence, for the government, during his opening statement mentioned that a co-defendant in this case, ... Jose Bolivar-Delgadillo ... had been convicted, mentioned the conviction of a co-defendant in the case.

whether he or she could follow the instruction.

When the prosecution called Bolivar, he gave testimony that totally exculpated all three remaining defendants at trial. The testimony directly contradicted earlier statements he made to INS agents, and it clearly surprised the prosecutor. Bolivar then asserted his Fifth Amendment privilege against self-incrimination in response to all subsequent questions. Faced with Bolivar's apparently perjurous testimony, the district court gave defendants a choice: the court would either strike all of Bolivar's testimony, or it would allow the INS agents to testify to Bolivar's prior inconsistent statements. Defendants chose the former.

The crux of Martinez' argument is that the prosecutor committed misconduct by referring to Bolivar's guilty plea because Bolivar's testimony was later struck in its entirety, and that any proper purpose that might have attended the prosecutor's reference to Bolivar's anticipated testimony disappeared as soon as Bolivar gave his surprise exculpatory testimony, which the district court struck at Martinez' behest.

Martinez argues that *United States v. Smith*, 806 F.2d 971 (10th Cir.1986); *United States v. Austin*, 786 F.2d 986 (10th Cir.1986); and *United States v. Baez*, 703 F.2d 453 (10th Cir.1983), require us to find misconduct. In these cases, the prosecutor (*Smith, Austin*) or trial judge (*Baez*) referred to previous guilty pleas or guilty verdicts concerning codefendants or coconspirators and cautionary instructions were not given to the jury. The court in *Baez* stated the rule:

"A codefendant's guilty plea may not be used as substantive evidence of a defendant's guilt.... If the codefendant testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the codefendant's credibility as a witness.... Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical."

*Baez*, 703 F.2d at 455 (citations omitted).

In analyzing claims of prosecutorial misconduct, we must perform a two-step analysis. We must first examine whether the prosecutor's conduct was in fact improper, and if so, then determine whether such conduct requires reversal, or whether it was harmless beyond a reasonable doubt. *United States v. Hasting*, 461 U.S. 499, 510, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983); *United States v. James*, 728 F.2d 465, 468 (10th Cir.), *cert. denied*, 469 U.S. 826, 105 S.Ct. 106, 83 L.Ed.2d 50 (1984). "It is only when such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal." *Marks v. United States*, 260 F.2d 377, 383 (10th Cir.1958), *cert. denied*, 358 U.S. 929, 79 S.Ct. 315, 3 L.Ed.2d 302 (1959); *see also United States v. Hernandez*, 779 F.2d 456 (8th Cir.1985) (applying two-step analysis for claim of reversible error when prosecutor's opening statement referred to expected inculpatory statements by coconspirator).

We need not decide whether the unique circumstances of this case represent prosecutorial misconduct, because we are satisfied that they did not affect the trial's outcome. To determine whether prosecutorial misconduct requires reversal, we must look to the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole. The district court here promptly

---

I'm going to instruct you, ladies and gentlemen of the jury, and it's particularly important that you follow this instruction. I'm going to instruct you that are you [sic] not to consider Mr. Gorence's statement regarding the alleged conviction of an alleged co-defendant in the case as any evidence touching or bearing upon, and you must not consider in connection with the question on the guilt or innocence of any one of these three present defendants. You must not consider that statement as substantive evidence in the case.

Should Jose Bolivar–Delgadillo testify and should the matter of a conviction of his be discussed with you, I will instruct you at that time as to the limited purpose for which that conviction, should such a conviction come before you, I will instruct you for what purposes you can consider that conviction."

IV R. 318–19.

cautioned the jury concerning the reference to Bolivar. It emphasized that the jury must not consider the statements about Bolivar as bearing on the defendants' guilt or innocence in the case. These warnings clearly distinguish *Smith, Austin* and *Baez;* in none of those cases were fully adequate warnings given.

Further, the record shows that the prosecutor's single remark surely had no effect on the outcome. In addition to the district court's curative instruction, the prosecutor made no further reference to Bolivar's convictions, Bolivar's testimony was struck in its entirety, and the jury was instructed to disregard it. This contrasts markedly with the cases upon which Martinez relies. In *Austin,* the prosecutor referred repeatedly to convictions of coconspirators and two of those coconspirators testified without limiting instructions; in *Baez,* the uncorrected reference to the guilty plea enhanced the credibility of the government's key witness; in *Smith,* three coconspirators testified to their guilty pleas without limiting instructions from the judge, and the prosecutor questioned the defendant about the pleas and referred to them extensively in his closing argument.

Finally, in the instant case, substantial additional evidence supported the verdict of guilt. The evidence showed that Martinez agreed to transport Adrian Alvir–Villavares (Alvir) into the United States for $600, discussed with Alvir the terms of payment after he was in the United States, was present at the Western Union office in Albuquerque to receive payment sent by Alvir's brother-in-law, was present at the Albuquerque motel at which Alvir stayed, and drove a van containing Alvir in Albuquerque from the motel to a house in town. We therefore conclude that the prosecutor's reference to Bolivar's guilty plea was harmless beyond a reasonable doubt. *See Hernandez,* 779 F.2d at 460–61.

### V

Martinez also argues that the district court should have granted a mistrial because the jury had heard testimony concerning his prior involvement in transporting illegal aliens. The district court initially allowed Veronica Careveo to testify about the earlier smuggling of her father-in-law into the United States. When the district court discerned that Careveo did not testify from personal knowledge, it struck her testimony. Careveo's husband then testified concerning Martinez' involvement in the earlier smuggling. The court initially allowed the husband's testimony as admissible under Fed.R.Evid. 404(b), but then struck it in its entirety because of a perceived problem under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Martinez does not press any *Bruton* claim on appeal, but alleges instead that Mr. Careveo's testimony constituted improper evidence of Martinez' prior bad acts, and that striking the testimony did not cure the error. We disagree.

The testimony concerning Martinez was very limited. Mrs. Careveo merely testified that Cepeda had brought her father-in-law into the country; she did not in any way implicate Martinez personally. While Mr. Careveo identified Cepada and Martinez as having "come with" his father to the Careveo home in Albuquerque, he did not testify to any further facts which would incriminate Martinez. Since the district court struck this testimony and fully instructed the jury to disregard it, we conclude that any possible error was cured so that a mistrial was not warranted. The testimony of the Careveos was not such that it would create so strong an impression in the minds of the jurors that they could not disregard it as instructed. *Cf. Maestas v. United States,* 341 F.2d 493, 496 (10th Cir.1965).

AFFIRMED.