**Ronald BEACHUM,
Petitioner–Appellant,**

v.

**Robert TANSY, Respondent–Appellee.**

No. 88–2951.

United States Court of Appeals,
Tenth Circuit.

May 22, 1990.

Stephen P. McCue, Assistant Public Defender, Albuquerque, N.M., for petitioner-appellant.

William McEuen, Asst. Atty. Gen. (Hal Stratton, Atty. Gen., and Bill Primm, Asst. Atty. Gen., on the brief), Santa Fe, N.M., for respondent-appellee.

Before TACHA and McWILLIAMS, Circuit Judges, and CHRISTENSEN *, District Judge.

CHRISTENSEN, Senior District Judge.

Petitioner-appellant Ronald Beachum, a state prisoner, appeals from a final order of the federal district court denying his petition for a writ of habeas corpus. He contends that his present imprisonment for state crime convictions violates his rights to due process, a fair trial, equal protection, confrontation, and effective assistance of counsel. Finding no error of constitutional dimensions in these convictions, we affirm denial of the writ.

I.

STATEMENT OF THE CASE

Shortly after midnight on July 8, 1980, Kathy McGuire, a student nurse living alone in a rented house in Roswell, New Mexico, was suddenly awakened by a man's entry into her bedroom. Apparently he had gained access through an outside

---

* Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

window in an adjoining room. He threatened, brutally attacked with a piece of glass, manhandled, raped and robbed her. She did not know the intruder and could only generally observe his physical characteristics. However, she saw that he was black and had a beard and remembered that in their struggles she scratched him. She reported the attack immediately.

Within four days after the attack, the victim gave a detailed statement concerning her recollection of the circumstances and observed a police lineup of three black men, including Beachum. She was unable to identify visually any of them as her attacker but when each man spoke words used by the rapist, she picked out Beachum as the one. On August 28, 1980, the Roswell Chief of Police conducted a "hypnosis session" with McGuire. During the session and afterwards, she selected Beachum from photographic arrays.

Thereafter, a complaint was filed against Beachum in the justice of the peace's court. McGuire identified him as her assailant during the preliminary hearing and testified that she had seen him pacing in front of her house the Saturday before the assault. Beachum was held by the magistrate to answer in the District Court of Chavez County, New Mexico. There he was charged by criminal information with two counts of first degree criminal sexual penetration in violation of N.M.Stat.Ann. § 30–9–11(A)(2) (1978), one count of aggravated burglary in violation of N.M.Stat. Ann. § 30–16–4 (1978), and one count of armed robbery in violation of N.M.Stat. Ann. § 30–16–2 (1978).

Before trial in the state district court, Beachum filed a motion to suppress McGuire's testimony in its entirety, claiming it to be irrevocably tainted by the hypnosis session and related identification procedures. The district court declined to suppress all of her testimony but determined that (1) she would not be allowed to make in-court identification of the defendant; (2) the witness would not be permitted to testify to any evidence developed from the hypnotic session; and (3) the witness would be permitted to testify to the events occurring

on July 8, 1980, and her voice identification of defendant, but would not be permitted to testify to her identification of defendant at any subsequent time, nor to testify to her identification of defendant based on any subsequent events. This decision was affirmed on interlocutory appeal by the state in *State v. Beachum,* 97 N.M. 682, 643 P.2d 246 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982).

Beachum was convicted by verdict of a jury on all counts of the information and, having been found an habitual offender, sentenced to consecutive terms totaling seventy years, with an additional two years on parole. The State Court of Appeals affirmed the convictions in an unpublished memorandum opinion. The Supreme Court denied certiorari.

Beachum's initial application for a writ of habeas corpus to the United States District Court for the District of New Mexico was denied for failure to exhaust state remedies but thereafter, following unsuccessful petitions for relief to the state district court and the New Mexico Supreme Court, Beachum again applied to the federal district court. Upon the basis of the petition and briefs, the assigned federal magistrate filed proposed findings and conclusions and recommended dismissal of the petition with prejudice. He noted that the petitioner had provided an adequate statement of the procedural history and determined that an evidentiary hearing was unnecessary. The federal district judge adopted the magistrate's recommendation and entered judgment dismissing the petition.

Beachum contends on this appeal that, contrary to the decision of the district court, his constitutional rights had been violated during the state trial because of (1) the admission of evidence influenced by hypnosis, related limitations upon his rights of confrontation and cross-examination; (2) closing arguments of the prosecution; (3) evidence of emotional trauma suffered by the victim; (4) insufficiency of the evidence to establish guilt beyond a reasonable doubt; (5) ineffective assistance of counsel; (6) the court's *sua sponte* exclusion of the sole black juror on the trial

panel; (7) inclusion in the information of charges greater than those for which he was bound over; (8) denial of his right to counsel at the lineup and hypnosis sessions; (9) admission of testimony from an unlicensed clinical psychologist; and (10) receipt of testimony concerning the type of blood found on the victim's pillowcase.

We vary the order in which we discuss the points enumerated in appellant's brief to throw perhaps helpful light on our discussion finally of the sufficiency of the evidence.

## II.

## STANDARD OF REVIEW

In a collateral attack pursuant to 28 U.S.C. § 2254 on a state criminal conviction, the ultimate burden of establishing that the state proceeding violated the Constitution of course remains on the petitioner. In given circumstances, reliable and adequate written indicia of state court findings are to be presumed correct. 28 U.S.C. § 2254(d).

Procedural and historical facts developed at the pretrial suppression hearing in the state court were reviewed by the court of appeals and appear of record. *State v. Beachum, supra,* 643 P.2d at 247–48. The court of appeals ruled only upon the sufficiency of the evidence, a question essentially of law, declining to address the admissibility of the victim's testimony because of its view that the issue was not properly reserved at the trial. Memorandum Opinion in *State v. Beachum,* No. 6032 (N.M.Ct. App. Aug. 4, 1983), Record on Appeal, Vol. 1, Tab 1, Exh. B. Following the trial, there were no other meaningful findings in the state courts, all rulings being summary. The federal magistrate did not hold an evidentiary hearing nor make significant findings of fact as distinguished from mixed findings of fact and law, observing that the "statement of the procedural history of this case, together with a detailed statement of relevant facts [in the petition] provide an adequate procedural and factual background to Petitioner's claims." Under these circumstances we need not decide whether critical factual findings at a pretrial suppression hearing are to be accorded presumptive validity under § 2254(d) in a collateral review of subsequent state trial proceedings. Nor is the clearly erroneous rule, Fed.R.Civ.P. 52(a), applicable to the magistrate's findings. *See Case v. Mondragon,* 887 F.2d 1388, 1393 (10th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990); *Bowen v. Maynard,* 799 F.2d 593, 610 (10th Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986); *Castleberry v. Alford,* 666 F.2d 1338, 1342 (10th Cir.1981). The issues of this appeal will be decided *de novo.*

## III.

## DISCUSSION

*Hypnosis in Relation to Identification*

█ The appellant contends that because of the State's improper and unduly suggestive identification procedures, in particular its use of hypnosis, the victim's testimony at trial violated his rights to due process, a fair trial, and confrontation.

*Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), rejected the theory initially relied upon by Beachum before the state court that hypnotically enhanced testimony should be excluded at trial *per se* on the ground that it tends to be unreliable. There the holding was predicated on a defendant's constitutional right to testify in her own defense.

In *Robison v. Maynard,* 829 F.2d 1501 (10th Cir.1987), where the state was a proponent of the questioned evidence, this court rejected application of the *per se* rule and held that dangers inherent in the use of hypnotically refreshed evidence under the circumstances of that case did not constitute denial of the constitutional rights to due process or confrontation. We observed that "[a] reviewing court must determine whether safeguards have been employed to insure reliability of the testimony to make it admissible," and concluded that the state court's finding of the existence of such safeguards, in the absence of negating evidence, was entitled to the presump-

tion of correctness under § 2254(d). Here we do not indulge such presumption of correctness for reasons already indicated, but we deal *de novo* with a record strongly supporting the existence of adequate safeguards.

Different conclusions have been reached in other circuits under variant circumstances concerning the reliability or fairness of hypnotically refreshed or induced testimony in relation to due process. *E.g., Little v. Armontrout,* 819 F.2d 1425 (8th Cir. 1987), *vacated on other grounds,* 835 F.2d 1240 (8th Cir.1987); *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *McQueen v. Garrison,* 814 F.2d 951 (4th Cir.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 332, 98 L.Ed.2d 359 (1987); *United States v. Valdez,* 722 F.2d 1196, 1203–04 (5th Cir.1984). These and other decisions relied upon by one party or the other are significantly different factually from the case before us.

Here the real question is not so much whether hypnotically created, induced or refreshed testimony was unfairly utilized at the trial but whether, despite apparently reasonable efforts of the state trial judge to preclude such possibilities without entirely aborting the prosecution by application of a *per se* exclusion rule then contended for by the defendant's counsel, the victim's testimony was influenced by hypnosis to any substantial degree at all. A reading of the trial transcript is convincing that there were "adequate safeguards of reliability" and that the admitted testimony was not constitutionally infirm.

The rulings of the trial court on objections to the victim's testimony were consistent with reasonable standards it had established in advance as confirmed by the state court of appeals after sensitively reviewing the problem. While departures from generally accepted controls for assuring the reliability of hypnotically refreshed testimony had been found, some important safeguards existed, including a relatively comprehensive statement to police officers of the victim's recollections shortly after the attack occurred and a tape recording of the session itself, however imperfect and incomplete it may have been because of telephone and other interruptions. All identification of the defendant connected with the hypnosis was excluded by the trial judge and any subsequent identification carefully avoided. While there were some minor failures of recollection, uncertainties and contradictions, the victim's testimony at trial remained, after searching cross-examination, essentially the same as her pre-hypnosis statements. Moreover, her testimony was corroborated by physical and circumstantial evidence.

The appellant argues that McGuire's pre-hypnotic descriptions of the assailant were "uncertain, inconsistent and at odds with her trial testimony," particularly as to his height and build and as to where on his body she scratched him, and that at trial she was more certain and assured than indicated by her pre-hypnosis statements, observing that "it is quite likely, given the nature of the hypnosis session in this case and its apparent effects upon McGuire's factual testimony, that [she] acquired a more confident demeanor as a result of her hypnosis." Petitioner's brief 25–27.

We read little, if anything, in the record to support this argument, given the uncertainties and minor variations normal to the recollection of honest witnesses after lapse of time. On the contrary, we are impressed by her seeming forthrightness and candor under difficult circumstances, her apparent effort to avoid any relationship of her testimony to the hypnosis, and her candid concession that in some instances she did not recall portions of her prior statements. And we agree with the conclusion of the federal magistrate that the petitioner failed to establish by preponderance of the evidence that any differences between the pre-hypnosis statements and her trial testimony were the products of hypnosis.

■ There remains to be addressed, however, appellant's related contention that his Sixth Amendment right of confrontation was impaired by the trial court's limitation of cross-examination.

Beachum contends that he was "effectively precluded by the trial court from impeaching McGuire's self-assured demean-

or with evidence of her hypnosis and its likely effects." He argues that "[a]s recognized by the Magistrate the trial judge made it clear that if petitioner attempted to introduce that evidence, he would allow the admission of McGuire's visual identification testimony." "Thus," the argument continues, "the judge improperly curtailed petitioner's cross-examination by conditioning its full exercise upon the admission of evidence, which, as he himself had ruled, was offensive to due process."

The magistrate found "a fairer characterization of the trial court's ruling to be that if Petitioner attempted to impeach McGuire's trial testimony through admission of her post-hypnosis statements, the state would be entitled to use otherwise inadmissible post-hypnosis statements for rehabilitation or rebuttal, or to place in context any post-hypnosis statements introduced by petitioner." He added: "This ruling was in no way violative of Petitioner's rights." Magistrate's proposed findings and recommended disposition ¶ 19–20. It is true that after reference to additional extracts from the transcript, the magistrate enigmatically indicated that the trial judge had expressly ruled out any reference whatever to the fact of McGuire's hypnosis itself. We do not agree, and interpret the comments as only a reiteration of what had been said before—if the subject were gone into on cross-examination it would open the way for broadened inquiry on redirect. The situation is rendered clear by the colloquy between court and counsel at the beginning of the trial:

MR. KNANISHU: ... Your Honor—and we would ask the court to take judicial notice of the testimony of Dr. Diamond in the pretrial matter when he talked about other evidence as becoming possibly enhanced by the hypnosis process. What other evidence we have after hypnosis that is going to be coming in that we don't think should be coming in, I guess we are basically asking is exactly what does the Appellate Court opinion say in terms of what is left in this Court's discretion as to post-hypnotic evidence. And secondly, what type of ruling do we have on the merits in this case in terms of what will open the door for the district attorney. It would be our opinion that nothing can open the door with regard to the identification, her making an in-court I.D. or bringing up the out-of-court I.D., but your Honor, we have a subsequent to the hypnosis, we have testimony of a preliminary hearing, we have testimony at a parole revocation hearing, which we will not refer to as a parole revocation hearing, but as an earlier proceeding. We have testimony that differs substantially from her initial statements, which we are going to tender into evidence here, pursuant to this motion, defendant's exhibits 1, and state that this is the only recorded statement made by Kathy McGuire.... What we are basically asking is what can we impeach with, what is—what is the witness here limited to testifying to. We have some further unsettled questions here, that are—

THE COURT: Not unsettled in my mind, my order was affirmed. I can't make it any clearer as to what she can testify and what she can't. Now if you want to open up post-hypnotic statements of this, well you open them up. You are going to open up a whole bunch of things when you do that. I have shut her off at the request of the defense, I have closed her mouth, on July 8, 1980 (the date the prosecutrix gave her statement to a police officer shortly prior to the hypnosis session), and she will not be permitted on the part of the state to testify to anything beyond that date, connected with this case. Now if you want to open up beyond that, she's open.

Trial Transcript at 189–91.

We find in the trial record no request from defense counsel to cross-examine concerning the fact of hypnosis in and of itself or any attempt to do so. Despite the magistrate's gratuitous assumption, he concluded that the "evidence of the fact of McGuire's hypnosis and its possible effects was of marginal relevance, while at the same time likely to result in considerable confusion of the issues," and that there was no related constitutional error. While

we would not necessarily disagree with such conclusion were it germane, we are convinced that as to no aspect of the case revealed by the record does it appear that constitutional limits were transgressed by the court's rulings concerning cross-examination.

### Closing Arguments

■ Appellant contends the prosecutor's comments in closing argument were so egregious as to deprive him of a fair trial within the teachings of *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). He complains of assertions by the prosecutor that Beachum "admitted" that on the night of the crime he had been one and a half blocks from the residence of the victim. Objections were made by counsel for the defendant that this was a misstatement of the record because of the distinction between "staying at" and "being at", and Beachum's claim to an alibi on the particular night in question. The trial court did not expressly rule on the objection but told the jurors to rely on their own memories.

An investigating officer had testified on the subject:

> Q. All right. Now do you recall, sir, what he (Beachum) said in connection with his whereabouts on the night of July 7, 1980? (The night of the assault.)
> A. If—let me start from the beginning.
> Q. Yes, sir.
> A. He at first denied we had asked him of his previous whereabouts and I believe he had denied ever being in the Roswell area. Thereafter he did change his story and admitted to being in the Roswell area on these nights.
> Q. On the night of July 7?
> A. Yes, sir.
> Q. And into the morning of July 8?
> A. Yes, sir.
> Q. When he ultimately admitted that he was in Roswell on that particular date, did he tell you where he was in the Roswell area?
> A. Yes, sir.
> Q. Where did he say he was?

> A. He was staying at the residence of 212½ West Bland here in Roswell.

Trial Transcript at 520–21.

Despite the vagueness of the phrase "staying at," the context of the testimony demonstrates that the comment of the prosecutor was not without some arguable basis. In any event, we find no constitutional infirmity in it, nor in the court's response to defense counsel's objection.

■ It is also asserted that the prosecutor misstated the evidence concerning how much light shown in the McGuire's bedroom window at the time of the assault and her related statement about scratching her assailant. Again, there was some colorable basis for the prosecution's argument, and any related error would not be of constitutional significance. Appellant also argues that the prosecutor's statement "now again here we go, who is the script writer?" implied that the defense bore the burden of proof. We agree with the magistrate that read in context the prosecutor's remarks could not be reasonably interpreted as appellant suggests. The prosecutor apparently had sensed that on cross-examination it was inferred that the victim had been programmed to answer, and he had juxtaposed her answers with physical facts in evidence, continuing:

> But she knew she had scratched him and described the general areas of where she scratched this person that attacked her, and on the 11th of July, this defendant was photographed and he had scratch marks on the neck, on the shoulder, on the back of the shoulder, just as it is in the photographs and the exhibits we have shown you. Now again here we go, who is the script writer?

Trial Transcript at 700–01.

The appellant's rights were not thereby impaired.

### Evidence of Emotional Trauma

■ The appellant says testimony that he stared at the victim during the preliminary hearing and that she suffered severe emotional trauma as a result of the testi-

mony in that hearing, violated his right to due process.

Under New Mexico law, an essential element of the felony of criminal sexual penetration in the first degree is its perpetration "by the use of force or coercion which results in ... great mental anguish to the victim." That this element was deemed important at the trial is indicated by defendant's motion at the close of the state's case in chief for a directed verdict for, among other reasons, the insufficiency of the evidence on the "question of great mental anguish." Trial Transcript at 542.

Dr. Allen Young, Clinical Psychologist for the State of New Mexico's Rehabilitation Center, had testified that the victim was debilitated and emotionally traumatized by the rapes and described the victim's mental anguish from the time she first came to him. His direct testimony was quite extensive as was cross-examination; the only portions touching upon McGuire's reactions at the preliminary hearing were brief:

Q. Tell this jury, please, what the specific problem that you are dealing with?

A. Severe emotional trauma, severe depression, she was totally and completely wiped out, it was just a very definite serious trauma in her life, totally different than any experience that she could have gone through in her life.

Q. And over the series of sessions that you had with her, were you able to make any progress in the treatment of this severe problem?

A. I felt very good, each session, even the first session, I felt there was a lot of purging and a lot of releasing, and the second and the next session, I felt good about them, and then she went through a second trauma, completely and totally wiped out again, and that was the court hearing upstairs, and—

MR. KNANISHU: I'm going to object to that, your Honor, we can't make determinations about great mental anguish, based upon court proceedings, and at some point this all becomes very circular.... It seems to me, your Honor,

that the trauma resulting from court testimony can't be considered here.

THE COURT: Well, I think you are probably correct. I'm not sure how we handle it at this point.

MR. KNANISHU: Move to strike.

THE COURT: He has distinguished between the two all right.

MR. KNANISHU: I move—

THE COURT: Noted and proceed.

Q. What did you do in this progress of the treatment beyond that point?

A. Well, the reason I made the statement is because within just a few days I was called by Dr. O'Malley's office to go to the hospital and visit with her at the hospital, and in talking with her, and I was personally it was very grueling testimony that I was involved in in that session and I felt it for days and—

Q. Excuse me, are you acquainted with the term preliminary hearing?

A. Yes, sir, I am.

Q. Is that what you were referring to a preliminary hearing in this case?

A. Right. I assume it was the preliminary hearing. It was the defendant and the plaintiff and the attorneys and the judge.

Q. Okay.

A. And when she came to me, you know, in this hospital situation, or I went to her, actually, I went to the hospital and visited her, she had just relived the entire experience. I watched the defendant during the time that I was in there giving my testimony.

MR. KNANISHU: Your Honor—

A: —and he was staring at her.

MR. KNANISHU: Your Honor I will object.

THE COURT: Sustained, and the jury will disregard. Counsel you better come up.

(Short discussion at the bench, between the court and counsel.)

Trial Transcript at 473–74.

During his argument to the jury, defense counsel himself, commenting on the testimony of Dr. Young, said, "and he mentions something about somebody—about the de-

fendant staring at her in another hearing, and that was stricken and you are not supposed to consider that," adding "that is exactly the role of the witness, that people look, they have to."

With this further amelioration beyond the court's striking the reference to staring and the general relevancy of the testimony of McGuire's continuing state of mind, we agree with the magistrate that, however inappropriate Dr. Young's remark may have been, it did not deprive petitioner of a fair trial. In a habeas corpus action the significant inquiry is not whether the state court has applied properly the rules of evidence but whether an error of constitutional magnitude has been committed. *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir.), *aff'd on rehearing*, 888 F.2d 1286 (1989) (*en banc*). *See also Nichols v. Sullivan*, 867 F.2d 1250, 1253 (10th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3169, 104 L.Ed.2d 1031 (1989).

### *Effectiveness of Counsel*

The appellant argues here, as he did before the federal magistrate, that he was denied the effective assistance of counsel before the trial by his then lawyer's failure to file timely motions to dismiss, to suppress the victim's voice identification and for an independent psychiatric examination. The magistrate found that no such issue was presented in the petition and should not be considered; he nonetheless noted that the petitioner's conclusory allegations of prejudice were inadequate for meeting his burden of proving some deprivation of constitutional rights. We agree, but add a few words only against the possibility that the claim of prejudice could be implied from other allegations of the petition.

■ To establish a deprivation of the right to effective assistance of counsel, the defendant would have to show that counsel's performance fell below objective standards of reasonableness under prevailing professional norms and that there was a reasonable probability but for counsel's unprofessional errors that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668,

688 and 694, 104 S.Ct. 2052, 2064–65 and 2068, 80 L.Ed.2d 674 (1984). No presumption of the ineffectiveness of counsel's representation should be indulged without cogent reason. *See Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "We approach this review with considerable restraint." *United States v. Rivera*, 900 F.2d 1462, 1472 (10th Cir.1990) (rehearing *en banc*). To find that the defendant was denied effective assistance of counsel as guaranteed by the Sixth Amendment, we would have to find that his counsel undermined the functioning of the adversary system to the extent that the trial cannot be relied upon as producing a just result. *Id.* at 1472.

■ The record suggests no substantial possibility that the court would have granted a defense motion to suppress the voice identification whether filed after or before the preliminary hearing. Due process does not require the rote performance of futile exercises. It is sheer speculation, too, that were the prosecutrix examined by an independent expert on the mental anguish issue, the result of the trial would have been different. The record as a whole indicates that the claimed errors would not have affected the outcome of the trial.

### *Denial of Right to Counsel at Lineup and Hypnosis Session*

■ Petitioner contends that he had a constitutional right to be represented by counsel at the lineup and hypnosis sessions. While there is such right at post-indictment lineups, *United States v. Wade*, 388 U.S. 218, 235–37, 87 S.Ct. 1926, 1936–38, 18 L.Ed.2d 1149 (1967), it has now been authoritatively established that any such right does not attach until there is a criminal prosecution and its "critical stage" has been reached. *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *Nees v. Bishop*, 730 F.2d 606, 611 (10th Cir.1984). The same limitation would obviously apply to a precharge hypnosis session at which the defendant was not present.

At the time of the lineup, the defendant apparently was in police custody on an independent charge, he had not been charged with the crimes involved in this appeal, and he was then only a suspect whose possible involvement was under continuing investigation. *Brewer* and *Nees* are controlling against this claim.

### Exclusion of Juror

 The defendant contends that his right to a representative jury and to equal protection were violated by the court's *sua sponte* exclusion from the jury of the only black member. The trial court at the commencement of the trial excused a black alternate juror because of tardiness in her previous attendance on the court and its effect upon the trial, commenting "she's gotten too old for me ... she didn't feel she had to be here before that time, she had gone to work a little bit ... she doesn't seem to be too much in tune with the program." Appellant does not charge directly that the judge was racially motivated but relies upon a "presumption of racial discrimination" which he reads from *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We believe *Batson* to be inapposite and conclude that, far from any racial bias, the court exercised its legitimate prerogative of judicial management. As pointed out in *Batson,* "[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his known race.'" The Constitution does not demand a representative jury, but only an impartial one. *Holland v. Illinois,* — U.S. ——, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990). When it is the court that has dismissed a venire member of a given race, an equal protection claim is defeated by a neutral explanation for that dismissal. *United States v. Martinez–Nava,* 838 F.2d 411, 413 (10th Cir.1988). There is a satisfactory one here.

### Other Contentions

The defendant's contentions that he was deprived of a fair trial by the admission of testimony from an unlicensed clinical psychologist and by the inconclusive character of testimony of blood typing, and his complaint of variance between charges at the preliminary hearing and in the information are without merit and warrant limited discussion.

 The defendant's blood was type "O." Blood found on the victim's pillowcase was classified by an expert as type "O" by using only one of two possible tests, but the witness explained this to the jury and testified he was "fairly confident" of the result. The admission of this cumulative circumstantial evidence for evaluation by the jury was within the court's discretion.

 Dr. Allen Young was called by the prosecution on the mental trauma issues as an expert in psychology. He was a clinical psychologist for the State of New Mexico, had both a master's degree and doctor's degree in counseling and guidance and had testified in a number of civil cases, including child custody and disability cases, but he was neither licensed nor certified as a psychologist and had not testified before in a criminal case. A trial court's assessment of the qualifications of an expert witness will be disturbed only for a clear abuse of discretion. *United States v. Zamora,* 784 F.2d 1025 (10th Cir.1986). We find none here.

 Defendant's contention that his due process right was violated when he was bound over for trial on lesser charges than those contained in the subsequent information is without merit. It is undisputed that at the preliminary hearing the prosecutor announced that the charges were two counts of criminal sexual penetration in the first degree, one count of robbery, and one count of aggravated burglary. The defendant was bound over on those charges. The fact that he may have been bound over on "robbery" and the information charged him with "armed robbery" had no unconstitutional implications. Armed robbery is not a distinct offense from robbery. "'Armed robbery' is a way to commit 'robbery' and if done in that way, the penalty is greater but the basic offense remains robbery." *State v. Roque,* 91 N.M. 7, 569 P.2d 417, 419 (Ct.App.), *cert.*

*denied,* 91 N.M. 4, 569 P.2d 414 (1977). Both courts had jurisdiction of the charges before them. Evidence received at the preliminary hearing established that the assailant used a piece of glass as a weapon to accomplish his crimes. The defendant had fair notice of the charges.

### Sufficiency of the Evidence

It is the further contention of the appellant that there was insufficient evidence at the trial to prove beyond a reasonable doubt that he was the perpetrator of the crimes charged.

■ A conviction can constitutionally stand only if, after viewing all of the evidence presented at the trial in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt. *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987).

■ We do not say that the proof in this case was so overwhelming as to render some other impairment of constitutional rights, had it occurred, harmless beyond reasonable doubt within the doctrine of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). But we do hold, there being no error of constitutional dimensions to taint the verdict, that the evidence of guilt was so substantial that any rational juror could have found all of the essential elements of the crimes charged beyond all reasonable doubt.

The evidence was undisputed that Kathy McGuire was brutally raped by a black man and the other charged offenses were committed at the time and place alleged in the indictment. The evidence that sexual penetration was accomplished with force and coercion resulting in great mental anguish to the victim was overpowering, if not conclusive, as was the proof of the other crimes charged. The identity of their perpetrator is the critical issue in evaluation of the sufficiency of the evidence to satisfy constitutional criteria.

The victim's voice identification of the defendant within three days of the rapes; the victim's description of the rapist and its general correspondence with that of the defendant; the scratch marks found upon the body of the defendant corresponding generally to those the victim testified she had inflicted upon the rapist; the fact that the defendant, after first denying that he had been in the vicinity on the night in question, admitted that at that time he had been staying within two and a half blocks; the blood found on the victim's pillow following the crime likely being the same type "O" as the defendant's (the victim's blood being type "A"); the fact that tennis shoe prints were found on the ground outside the victim's window following the attack and that Beachum was wearing tennis shoes that night; credibility problems with respect to the testimony of witnesses called to substantiate the contention that the scratches found on Beachum's body were administered by his girl friend rather than by the victim and concerning a claimed alibi (the defendant did not testify on his own behalf), correlated persuasively with established surrounding facts and circumstances to provide adequate support for the identification.

## IV.

### CONCLUSION

The trial court committed no error of constitutional dimensions. Testimony of the prosecutrix was properly treated and received at the trial, despite her previous hypnosis. The prosecuting attorney's arguments did not deprive the defendant of a fair trial. The effectiveness of defendant's counsel was not constitutionally deficient, nor was there any deprivation of the right to counsel. Evidence and rulings concerning emotional trauma and reactions of the victim did not involve error or prejudice of constitutional magnitude, the evidence as a whole was adequate to support the verdict, and defendant's claims of constitutional er-

rors in other areas of the case also are without merit.

Accordingly, the judgment of the district court denying the Writ is AFFIRMED.