**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 14 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

JOSE CARLOS ARRAS, JR., and
LORENZO RUIZ,

       Defendants-Appellants.

Nos. 02-2341
& 02-2342

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. Nos. CR-02-598-01 & 02-MCA)**

---

Howard Anderson of Albuquerque, New Mexico, for Defendant-Appellant Arras.

James F. Maus of El Paso, Texas, for Defendant-Appellant Ruiz.

Laura Fashing, Assistant United States Attorney (David C. Iglesias, United States Attorney, with her on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

---

In a two-count superseding indictment, Lorenzo Ruiz and Jose Carlos Arras were charged with conspiracy to import more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 952(a), 960(a)(1), (b)(2), and 963, and conspiracy to possess with intent to distribute the same in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. After a joint trial, a jury found each defendant guilty of both charges. The defendants appeal from the judgments of the district court on grounds of insufficient evidence, improper jury instructions, and cumulative error. Mr. Arras also claims he received ineffective assistance of counsel. We affirm

**I.**

The government's key trial witness, Tammy Nielsen, testified defendants hired her to transport drugs to Denver, Colorado, from El Paso, Texas, and Juarez, Mexico, on four separate occasions between December 2001 and February 2002. On her first trip, she arrived in El Paso by bus and met Mr. Arras, who gave her the keys to a 1983 Mercury Marquis she was to drive to Denver. He insisted she check the oil and tire pressure regularly. When she arrived in Denver, Mr. Ruiz paid her $2,000. Ms. Nielsen subsequently made two trips originating from Juarez that followed the same pattern, except she was paid $4,000 based on the added risk of crossing the border. On each trip, prior to her departure for Denver, Mr. Arras met her and again told her to be careful to check the car's oil and tire

-2-

pressure often. During her fourth trip, which began in Juarez, Ms. Nielsen was arrested as she entered the United States at the Santa Theresa border crossing. Customs agents discovered thirty-nine kilograms of marijuana in metal canisters inside the tires of the car.

## II.

Defendants challenge the sufficiency of the evidence supporting their convictions, arguing the government did not prove the amount of marijuana involved in the conspiracies was over 100 kilograms. Although Ms. Nielsen actually possessed only thirty-nine kilograms when she was arrested, United States Customs Agent Henry Shaw estimated at trial that she had couriered thirty-nine kilograms of marijuana during each trip, accounting for a total of roughly 157 kilograms.

Sufficiency of the evidence is a question of law that we review *de novo*. *United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997). To determine whether evidence is sufficient to uphold a conviction, "we examine, in the light most favorable to the government, all of the evidence together with the reasonable inferences to be drawn therefrom and ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arutunoff*, 1 F.3d 1112, 1116 (10th Cir. 1993). Jurors are not permitted

to speculate, however:

> While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference. . . . [A]n inference is reasonable only if the conclusion flows from logical and probabilistic reasoning: [i]f there is an experience of logical probability that an ultimate fact will follow from a stated narrative of historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts. A jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such [an inference] is infirm because it is not based on the evidence.

*United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (citations and quotations omitted).

The government must establish the following elements to prove the drug trafficking conspiracies alleged in this case: (1) defendants agreed with two or more persons to import and possess with intent to distribute 100 kilograms or more of marijuana, (2) defendants knew at least the essential objectives of the conspiracies, (3) they knowingly and voluntarily became part of the conspiracies, and (4) interdependence existed among the alleged coconspirators. *See United States v. Evans*, 970 F.2d 663, 668 (10th Cir. 1992). "[T]he government may establish these elements by direct or circumstantial evidence." *Id.* Since the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the government must also allege the quantity of drugs in the indictment and prove

-4-

that quantity to the jury beyond a reasonable doubt in prosecutions under 21 U.S.C. § 841(b)(1)(A) and (b)(1)(B). *See United States v. Jackson*, 240 F.3d 1245, 1248 (10th Cir. 2001).[1]

Although this is a close case, our review of the record convinces us that the evidence was sufficient to support defendants' convictions and that the jury's conclusion was not based on improper speculation or conjecture. Viewing the evidence together with the reasonable inferences to be drawn therefrom in a light most favorable to the government, we cannot say that no rational juror could have found the essential elements of the crime beyond a reasonable doubt. The jury's conclusion that the conspiracies in this case involved more than 100 kilograms of marijuana clearly flowed from logical and probabilistic reasoning.

Ms. Nielsen testified she "pretty much knew [she] was going to bring a car back with drugs in it," rec., vol. III at 67, and she "knew that what [she] was doing certainly was wrong." *Id.* at 68. She testified that on each trip, Mr. Arras met her to give her the Marquis, and gave her instructions to "make sure that the

_____

[1] At oral argument, counsel for the government referred the panel to *United States v. Wilson*, 244 F.3d 1208 (10th Cir. 2001), for the proposition that the government was not required in this case to prove drug quantity under *Apprendi*. Counsel subsequently submitted a letter to the court pursuant to Federal Rule of Appellate Procedure 28(j), in which she conceded that *Wilson* was inapposite and agreed the government was required to allege the quantity of marijuana in the indictment and prove that quantity at trial. The jury instructions and verdicts in this case make it clear the jury determined the amount of drugs beyond a reasonable doubt in accordance with *Apprendi*. *See* rec., vol. I, doc. 74, at Instructions 7 and 8; vol. V at 2-3.

air pressure on the tires was correct, [and] that [she] would continually check the oil." *Id.* at 71, 76. She reiterated that on each trip, "[she was] told to watch . . . the air pressure in the tires." *Id.* at 167. Mr. Arras even gave her an air compressor and tire gauge to make sure the tires were sufficiently full. *Id.* at 101. When a tire began to leak on the third trip because "there was a screw or something in it," *id.*, Ms. Nielsen could not take it to a mechanic or change it to the spare in the trunk because "the tires were heavy." *Id.* at 102. She testified that she knew there was marijuana in the tires. *Id.* at 128. When Ms. Nielsen returned to Denver, Mr. Ruiz picked up the car from her and paid her commensurate with her risk: $2,000 for the trip from El Paso and $4,000 for the Juarez trips because "[she] was taking the added risk coming in from Mexico." *Id.* at 72-73, 78, 90-91.

Agent Shaw, an experienced customs agent, testified that based on the smuggling cases he had investigated over the years, especially in the three years prior to this case, the going rate for transporting marijuana was $50 per pound. In this case, Ms. Nielsen was promised $4,000 for smuggling thirty-nine kilograms (eighty-six pounds), an amount in line with the going rate (eighty-six pounds smuggled at $50 per pound equals $4,300). Agent Shaw testified:

> Ms. Nielsen related that the first trip she was paid $2,000. But she didn't have to cross that vehicle from Mexico into the United States.
> The second and third trip, she told me that she was paid $4,000 for each of those trips. Again, given the going rate, $50 a pound, generally, to

transport it, that would put both of those–the other two loads–the $4,000 loads, would be about the same amount of weight.

*Id.* at 54-55. Agent Shaw also testified that other details of the trips indicated they all involved smuggling marijuana:

> She related that each trip that she made, she was cautioned, repeatedly, to maintain the tire pressure. And the reason for that is, as has been explained; the metal containers inside those tires, if they're–if the pressure drops, and that tire itself comes in contact with that metal container, it's going to tear the tire up.
> So, to me, the cautionary statements each time about maintaining the pressure, even the providing of a compressor so that she could do that, should one of the tires get a little low, leads me to believe that the other trips were also tire loads.

*Id.* at 55.

Defendants argue the government never offered Agent Shaw as an expert witness nor qualified him in front of the jury. Defendants are wrong on both issues. The government submitted written notice that it intended to call Agent Shaw as an expert witness and a filed a motion in limine for a ruling on the admissibility of his testimony. *See* rec., vol. I, doc. 65. At a pretrial hearing on this motion, the following exchange took place:

> The Court: What's the defendants' position with respect to Case Agent Shaw?
> Mr. Arras' counsel: Your Honor, we're not going to object to Agent Shaw testifying to the information proposed by the government.
> The Court: I wouldn't think so. Same for you, Mr. Maus?
> Mr. Ruiz's counsel: Right, your Honor.

Rec., vol. VI at 21.

When Mr. Shaw testified as to his qualifications and experience, neither defendant objected on grounds that his testimony was inadmissible expert testimony. Likewise, when he estimated the total amount of marijuana smuggled in this case based on his "education, [his] experience, and [his] familiarity with this case," neither defendant objected on those grounds. Rec., vol. IV at 53-60. Although jury instruction 15 did not use the words "expert witness," neither defendant objected when the court characterized Agent Shaw's testimony as "expert testimony" while reading the instructions to the jury. *Compare* rec., vol. I, doc. 74, at Instruction 15, *with* rec., vol. IV at 186. Having failed to object, and having failed to articulate a reason for us to depart from the general rule that a federal appellate court does not consider an issue not raised below absent plain error, *see Walker v. Mather*, 959 F.2d 894, 896 (10th Cir. 1992) (quotation and citation omitted), we will not consider this argument on appeal.

In addition, expert witnesses need not be qualified in front of juries. *See* 29 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE § 6265 (1997) ("Normally a trial court will hear qualification evidence before permitting the witness to give opinion testimony. That hearing may take place either in the presence or absence of the jury, at the discretion of the court.") (citing in footnote *Jenkins v. United States*, 307 F.2d 637, 648 (D.C. Cir. 1962) (Burger, C.J., concurring) ("[I]t is entirely within the discretion of the

District Court whether he should conduct the hearing out of the presence of the jury.")); *see also Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1396-97 (10th Cir. 1997) (district court's decision to allow witness to testify as expert after conducting qualification hearing outside presence of jury would not have been reversible); *United States v. Dysart*, 705 F.2d 1247, 1251 (10th Cir. 1983) ("Neither Rule 702 nor any other rule or precedent . . . sets forth a specific method by which the trial judge must determine the qualification of an expert."). The district court did not abuse its discretion in the manner in which it determined Agent Shaw's qualifications.

In sum, based on Mr. Arras' preoccupation with keeping up the tire pressure and his constant reminders to Ms. Nielson, the fact that Ms. Nielsen was paid or promised the same amount for each trip commensurate with the risk involved, and the fact that the going rate for smuggling marijuana across the border was roughly equal to her payments, a reasonable jury could conclude that Ms. Nielsen was transporting about the same amount of marijuana on each trip. The jury's finding beyond a reasonable doubt that the total amount of marijuana imported was over 100 kilograms was not excessively speculative, nor was it the result of merely piling inference upon inference. Rather, the jury made a logical probabilistic determination that Ms. Nielson transported four equal loads of drugs based on the facts that tire pressure was important on each trip, the going rate was

$50 per pound, and Ms. Nielsen was paid the same for each trip. In this scenario, the jury was given the opportunity to draw the conclusion that the conspiracies involved more than 100 kilograms of marijuana because there was a reasonable probability that the conclusion flowed from the proven facts. *See Jones*, 44 F.3d at 865. The evidence was sufficient to support the verdict.

### III.

Defendants' theory at trial was that Ms. Nielsen blamed them to cover for her boyfriend, Mr. William De Herrera, who had accompanied her on all four trips, and a Victor Gonzalez, whom defendants alleged was Ms. Nielson's "real Denver connection" for drugs. Pursuant to this theory, defendants objected to the court's proposed instruction cautioning the jury to consider only the crimes charged and not to be concerned with the guilt of anyone not on trial. Defendants noted that the pattern instruction included language reading: "except as you are otherwise instructed." They asserted that because other individuals were involved in the conspiracies and Ms. Nielsen was lying to cover for them, the guilt of these external parties was relevant to her credibility. The court did not add the language from the pattern instruction and ultimately instructed the jury as follows:

> You are here to decide whether the government has proven beyond a reasonable doubt that each defendant is guilty of the crimes charged.

And you must not be concerned with the guilt or innocence of other persons not on trial as a defendant in this case.

Rec., vol. IV at 188-89.

On appeal, Mr. Ruiz contends the court "in essence, told the jury to not consider the defendants' assertion that Nielsen was covering up for others by blaming the defendants." Ruiz Br. at 14. Mr. Ruiz also asserts the court erred when it failed to instruct the jury it could consider the guilt of others solely for the purpose of determining Ms. Nielsen's credibility.

We review for abuse of discretion the district court's decision to give a particular jury instruction and we consider the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law. *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1173 (10th Cir. 2000) (quotation and citations omitted). As we held in *United States v. Oberle*, 136 F.3d 1414, 1422-23 (10th Cir. 1998), an instruction admonishing jurors not to concern themselves with the guilt of anyone except the defendants, when "[r]ead in combination with the instruction requiring the jury to find guilt 'beyond a reasonable doubt,'" serves to "[focus] jurors on the task at hand: determining whether [defendants were] guilty of the [crime]." *Id.* In this case, as in *Oberle*, the court did not direct the jury to ignore the defense's cover-up theory when it gave an instruction indicating that the guilt of other people was not relevant to the guilt of defendants.

-11-

Mr. Arras points us to *United States v. Bernard*, 625 F.2d 854 (9th Cir. 1980), in which the Ninth Circuit reversed a conviction after the district court refused, when requested, to instruct the jury with respect to the special caution and careful consideration to be used in judging the credibility of an accomplice who testifies. *Id.* at 857. That case is inapposite because the district court in this case twice gave specific instructions to the jury admonishing them to weigh Ms. Nielsen's credibility with considerable caution because she was a drug user, an accomplice, and a criminal defendant who was testifying as part of a plea agreement. We are convinced that as a whole, the jury instructions properly directed the jury to determine the defendants' guilt while at the same time warned them they should consider Ms. Nielsen's testimony with great care.[2]

## IV.

Finally, we decline to consider Mr. Arras' contention that he received ineffective assistance of counsel. As we explained in *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995):

Ineffective assistance of counsel claims should be brought in

---

[2] Mr. Arras also contends the district court's errors, if harmless, have resulted in cumulative error. Because the district court did not err, cumulative error analysis is inappropriate. *See United States v. Oberle*, 136 F.3d 1414, 1423 (10th Cir. 1998) (cumulative-error analysis "should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors") (quoting *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) (en banc)).

collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed. The reasons for this rule are self-evident . . . . A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

*Id.* (citations omitted).

For the foregoing reasons, we **AFFIRM** the judgment of the district court.