F I L E D
United States Court of Appeals
Tenth Circuit

APR 5 2005

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SARA D. DUNMIRE,

      Defendant-Appellant.

No. 04-3002

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 02-CR-40145-02-SAC)**

B. Kay Huff, Lawrence, Kansas, for Defendant-Appellant.

Anthony W. Mattivi, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), District of Kansas, Topeka, Kansas, for Plaintiff-Appellee.

Before **McCONNELL** and **McKAY**, Circuit Judges, and **FRIOT**, District Judge.[*]

**McKAY**, Circuit Judge.

Defendant was indicted for knowing and intentional distribution of 2.97

---

[*]The Honorable Stephen P. Friot, United States District Judge for the Western District of Oklahoma, sitting by designation.

grams of crack cocaine and for conspiracy to knowingly and intentionally distribute in excess of fifty grams of the same substance. The case was tried to a jury, which returned a verdict of guilty on both counts. The interrogatories on the special verdict form provided the jury an opportunity to determine the quantity involved in the conspiracy count. The first question asked whether the government proved beyond a reasonable doubt that Defendant conspired to distribute more than fifty grams of crack cocaine. The jury marked the "no" box. The second question was similar but regarded a lesser quantity, more than five grams, but presumably less than fifty grams. This time the jury marked the "yes" box.[1] Defendant appeals only her conviction on the conspiracy count. The gravamen of her appeal is whether the government presented sufficient evidence to prove beyond a reasonable doubt that she agreed to distribute five or more grams of crack cocaine.

FACTUAL BACKGROUND

Narcotics detectives from the Emporia, Kansas, police department arranged a controlled buy through a confidential informant, Mr. Benton, to buy crack cocaine from Mr. Sharkey at 2 Union Street, Emporia, Kansas, on July 28, 2002. This particular buy was one of several arranged by Mr. Benton in an ongoing

---

[1]Defendant did not appeal the propriety of the special verdict form; therefore, this opinion does not address the correctness of the approach utilized by the district court in arriving at the quantity involved in the conspiracy count.

-2-

investigation of Mr. Sharkey.  On this occasion, Mr. Benton arranged to buy five grams of crack cocaine from Mr. Sharkey.  However, when Mr. Benton arrived at 2 Union Street to consummate the deal, Defendant, not Mr. Sharkey, delivered the drugs.  In addition, as is common in drug transactions, Defendant delivered less than the agreed-upon quantity of drugs; she delivered 2.97 grams, not five grams.

July 28, 2002, was the first time Mr. Benton and the officers involved in the investigation of Mr. Sharkey had seen Defendant associate with Mr. Sharkey and his drug deals.  Although several officers were involved in the July 28, 2002, controlled buy, only one officer witnessed the transaction.  Deputy Chief Williams was in an unmarked car parked on Union Street approximately one block from the house and witnessed the transaction through binoculars.

Deputy Chief Williams arrived at the scene a few moments before the controlled buy was to occur.  While preparing for the controlled buy, he noticed people on the front porch of the house at 2 Union Street.  Included in this group was a woman Deputy Chief Williams later identified as Defendant.  Shortly after Deputy Chief Williams arrived, but before the controlled buy, a red car drove to and stopped in front of the house at 2 Union Street.  At that time, Defendant walked from the porch to the car, stopped at the car briefly, and then returned to the porch.  Soon thereafter, the controlled buy took place, and Defendant delivered 2.97 grams of crack cocaine to Mr. Benton.

DISCUSSION

Whether the government presented sufficient evidence to support a conviction is a legal question we review de novo. United States v. Arras, 373 F.3d 1071, 1073 (10th Cir. 2004). In undertaking our review, we consider the record "in the light most favorable to the government to determine whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." United States v. Smith, 133 F.3d 737, 741-42 (10th Cir. 1997). "To be sufficient, the evidence supporting [a] conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir. 1990) (citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)). We have warned against sustaining a conviction based on mere suspicion or speculation: "While the jury may draw reasonable inferences from direct or circumstantial evidence, an inference must be more than speculation and conjecture to be reasonable, and caution must be taken that the conviction not be obtained by piling inference on inference." United States v. Jones, 44 F.3d 860, 865 (10th Cir. 1995) (citation and quotation marks omitted).

To support a conviction of conspiracy in the instant case, the government was required to submit sufficient evidence to the jury to find beyond a reasonable doubt each of the following elements: (1) an agreement between Defendant and

-4-

at least one other person to possess with the intent to distribute five or more grams of crack cocaine, (2) knowledge by Defendant of the essential elements of the conspiracy, (3) knowing and voluntary involvement with the conspiracy, and (4) an interdependence among the conspirators. Arras, 373 F.3d at 1074.

Because conspiracies are, by definition, secretive, elements of the crime are often established through circumstantial evidence. United States v. Andrews, 585 F.2d 961, 964 (10th Cir. 1978). Proof of a tacit agreement to break the law is often sufficient. United States v. Hartsfield, 976 F.2d 1349, 1354 (10th Cir. 1992). This, however, does not lessen the burden on the government to prove each element of the charge beyond a reasonable doubt. Beachum, 903 F.2d at 1332.

The only evidence the government presented that conclusively established a connection between Defendant and Mr. Sharkey consisted of Defendant's presence at Mr. Sharkey's house on July 28, 2002, and Defendant's participation in the drug deal for 2.97 grams of crack cocaine. The government also presented considerable evidence of other drug deals directly involving Mr. Sharkey for between 0.5 and seven grams of crack cocaine,[2] but Defendant was not seen with

---

[2]The government argues that the jury could have relied on the quantities distributed by Mr. Sharkey to arrive at the amount of five or more grams. This argument is in line with the government's theory of the case at trial: in for a penny, in for a pound. In other words, Defendant's involvement with one drug

(continued...)

-5-

Mr. Sharkey during any other drug deals, Mr. Benton never contacted Defendant to set up a drug purchase, and, although Mr. Benton had purchased crack cocaine from Mr. Sharkey for some time, Mr. Benton had never seen Defendant prior to July 28, 2002. Rec., Vol. III, at 133-34, 187-88.

The government presented some evidence in an attempt to establish an agreement to distribute drugs beyond the agreement to distribute 2.97 grams. This evidence is Defendant's conduct immediately prior to the drug deal at issue when she left the porch of Mr. Sharkey's house, approached the red car parked in front of the house, and then returned to the house. Deputy Chief Williams, who was the only witness to this occurrence, gave the following account:

---

[2](...continued)
transaction, with nothing more, demonstrates an implicit agreement to be involved with all of Mr. Sharkey's drug deals. This line of reasoning demonstrates a misunderstanding of the elements of a conspiracy to distribute drugs. As we stated in Arras, a conviction for conspiracy to distribute a certain quantity of drugs must be supported by evidence of an agreement to distribute that quantity of drugs. 373 F.3d at 1074. This requirement is only logical since our sentencing scheme for drug cases, at least prior to the remedial holding of United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005), is driven in large part by the quantity of drugs involved. See U.S. Sentencing Guidelines Manual §2D1.1(c) (2004). Evidence of participation in one drug deal demonstrates an agreement to distribute the amount of drugs involved in that particular transaction. However, absent additional evidence, participation in one drug deal does not render one culpable for a conspiracy to distribute the quantity of drugs actually distributed by one's alleged co-conspirator. This is one of those rare cases where the government failed to present to the jury any additional evidence to permit an inference regarding an agreement to implicate Defendant's participation in the other drug transactions.

Q.   From that location, tell the jury what it is that you saw, please.

A.   I arrived prior to the [confidential informant] arriving. I elected to set up surveillance, as I had done before in that area on the other buys. At that location I set up where I could have a direct line of view to the residence at 2 Union. I was there very few minutes prior to.

As I arrived there and set up where I could see, I first observed people on the front porch of the house, including a young female that was wearing a brown top and brown shorts. She walked from the front porch across the street up to a red vehicle and then returned back up on the porch.

From there, why, I was able to see what transpired as the [confidential informant] arrived in his red Dodge pickup. I saw her walk from the porch down to the pickup, lean over, bend into the window. And I did not see the transfer take place, but was advised by Detective Owens via radio that the buy had gone down. The money had transferred and the drugs were in the vehicle.

Q.   Okay. Let's back up a step. The same person who came out and approached Mr. Benton's vehicle, you saw her do the same thing a moment before?

A.   I did not see her actually hand off anything. I did see her walk across the street and approach a red vehicle that was sitting on the west side of the street.

Rec., Vol. III, at 240-42.

Based on this evidence, the jury was left to infer that at least 2.03 grams of

crack cocaine changed hands during Defendant's encounter with the person in the

other red vehicle. To reach that conclusion from this evidence, the jury would

have had to make speculative inference upon speculative inference.[3]

A reasonable juror could not find beyond a reasonable doubt that a drug deal for 2.03 grams of crack cocaine occurred without making the following string of impermissible inferences. First, the jury was required to infer that the conduct observed by Deputy Chief Williams constituted a drug deal. To arrive at this conclusion, the jury would have to assume that, because Defendant's brief encounter with Mr. Benton involved a drug deal, her brief encounter with the person in the red car was the same. While this inference may be permissible, it is barely so, in light of the government's burden to prove guilt beyond a reasonable doubt. Deputy Chief Williams did not see Defendant: lean over and bend into the window of the car (as she did when she sold crack cocaine to Mr. Benton), deliver anything to the passenger in the car, or walk away with money. Second, the jury was required to pile on top of the first inference the kind of drug allegedly transferred, i.e., crack cocaine. Finally, to arrive at the quantity determination, the jury was required to infer that the amount of crack cocaine exchanged

_____

[3]We focus on the encounter with the person in the other red vehicle and on the resultant question of whether the evidence as to that encounter was sufficient (together with the 2.97 gram sale) to establish guilt beyond a reasonable doubt as to the conspiracy count, because the record discloses no other evidentiary leg on which the conviction for the conspiracy to distribute more than five grams of crack cocaine might stand.

amounted to at least 2.03 grams.[4] The continued leap from inference to inference demonstrates the <u>possibility</u> of Defendant conspiring to possess with intent to distribute five or more grams of crack cocaine; however, that does not render such a finding <u>reasonable</u>, let alone establish proof beyond a reasonable doubt that the quantity attributable to Defendant was five or more grams. See <u>Smith</u>, 133 F.3d at 741-42. We have repeatedly warned against such speculation.

This case presents a somewhat novel scenario. Since the United States Supreme Court's decision in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), we have decided only one sufficiency of the evidence case as it relates to a conspiracy to distribute drugs. See <u>United States v. Arras</u>, 373 F.3d 1071 (10th Cir. 2004). In <u>Arras</u>, we emphasized the need for the prosecution to prove, beyond a reasonable doubt, that the alleged conspirator agreed to distribute a certain <u>quantity</u> of drugs. See <u>id.</u> at 1074.

In <u>Arras</u>, the defendants were convicted of importing more than 100

_____

[4]The government again relies on the drug deals Mr. Sharkey participated in without Defendant's assistance in an effort to prove the amount of drugs involved in this alleged deal. Assuming reliance on that evidence is proper, it does not support a reasonable inference that the amount of drugs that supposedly was exchanged during the encounter with the person in the red car was at least 2.03 grams. The government's evidence established that Mr. Sharkey, on five separate occasions, sold between 0.5 and 7 grams of crack cocaine. Three of the five transactions, more than half, involved less than the amount needed by the government to support the jury's verdict in this case. To infer an exact amount from the sporadic quantities involved in Mr. Sharkey's drug deals is pure conjecture.

kilograms of marijuana and conspiring to possess with intent to distribute the same. Id. at 1073. The defendants appealed, alleging insufficiency of evidence to support the quantity in question. Id. The evidence presented by the prosecution established the following: (1) defendants hired an individual to transport drugs to Denver by car from El Paso, Texas, and Juarez, Mexico, on four separate occasions; (2) on each occasion the defendants insisted that the driver check the oil and tire pressure regularly; (3) the driver was paid $2,000 for the trip from Texas and $4,000 for the trips from Mexico; (4) the driver was arrested during the fourth trip, resulting in the discovery of thirty-nine kilograms of marijuana hidden in metal canisters inside the car's tires; and (5) the government presented a witness who testified that the going rate for transporting marijuana was $50 a pound. Id. at 1073-74. After categorizing this as a "close case," we held that sufficient evidence was presented and affirmed the convictions. Id. at 1074. We reasoned that the jury could have logically and probabilistically arrived at the conclusion that the quantity of marijuana attributable to defendants was more than 100 kilograms

> based on [defendant's] preoccupation with keeping up the tire pressure and his constant reminders to [the driver], the fact that [the driver] was paid or promised the same amount for each trip commensurate with the risk involved, and the fact that the going rate for smuggling marijuana across the border was roughly equal to her payments . . . .

Id. at 1076.

In light of <u>Arras</u>, which was a close case, the facts in this case clearly do not support a finding beyond a reasonable doubt that Defendant agreed to distribute five or more grams of crack cocaine.  Although we address the same issue as was presented in <u>Arras</u>, the evidence supports an opposite legal conclusion.  The two cases begin in a similar vein; the only direct evidence presented to the jury regarding the quantity of drugs was a single occurrence that involved fewer drugs than the amount for which the defendants were ultimately convicted.  However, unlike the evidence presented by the government in <u>Arras</u>, in the case now before us, the government presented no evidence to the jury from which it could reasonably and logically infer that the amount of drugs Defendant agreed to distribute totaled five or more grams of crack cocaine.

Accordingly, we hold that the government failed to submit sufficient evidence to support the jury's finding that the amount of crack cocaine Defendant agreed to knowingly and intentionally distribute amounted to five or more grams.

**REVERSED** and **REMANDED** with instructions to vacate the conspiracy conviction.