**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID VIEYRA-VAZQUEZ,

Defendant - Appellant.

No. 05-2281
(D. Ct. No. CR-04-35 JP)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **MURPHY**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Following a two-day jury trial, Defendant-Appellant David Vieyra-Vazquez was convicted of conspiracy to bring in and transport illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). The District Court sentenced Mr. Vieyra-Vazquez to 36 months'

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment followed by 2 years' supervised release. On appeal, Mr. Vieyra-Vazquez argues that the District Court violated his Sixth Amendment right to confront witnesses against him by admitting into evidence a co-conspirator's hearsay statements without an opportunity for cross-examination. He also contends that there was insufficient evidence to support his conviction. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On October 10, 2003, Border Patrol Agents Raul Herrera, Jr., Serpio Garcia, and Lee Brawley intercepted a group of illegal aliens walking north near Columbus, New Mexico. The agents detained nine individuals, including Jose Ricardo Sanchez-Scott. Mr. Sanchez-Scott claimed that he was the leader of the group and said that he would be willing to provide the agents with information related to an alien smuggling operation in which he was involved. Specifically, he gave the agents information about a white Dodge pickup truck that was supposed to meet and transport the group.

Based on the information provided by Mr. Sanchez-Scott, Agents Herrera and Garcia located and pulled over a white Dodge extended-cab truck. Mr. Vieyra-Vazquez was the driver. Agent Herrera asked Mr. Vieyra-Vazquez whether he was a citizen of the United States. Without answering, Mr. Vieyra-Vazquez handed Agent Herrera a New Mexico State driver's license. Agent Herrera asked Mr. Vieyra-Vazquez why he was in the area, to which he responded that he was working as a carpenter for a local restaurant. The agents then transported Mr. Vieyra-Vazquez to the Border Patrol processing facility to verify his immigration status. At the processing facility, the agents learned that Mr.

Vieyra-Vazquez, who is not a citizen, had been apprehended by the Border Patrol on two prior occasions. Confronted with this information, Mr. Vieyra-Vazquez admitted he had previously been caught by Santa Teresa, New Mexico Border Patrol agents for smuggling. He claimed that, as a result, he was now working as an informant for an immigration officer. Though he could not immediately provide the immigration officer's name, Mr. Vieyra-Vazquez told the agents that he was in the area to conduct "reconnaissance" and to collect general information on alien smuggling activities.

According to Agent Herrera, Mr. Vieyra-Vazquez later changed his story, telling the agents that he was in Columbus "to smuggle some aliens, [and] that he was going to take them personally up north . . . to Belen, New Mexico." Agent Herrera also testified that Mr. Vieyra-Vazquez said that he was supposed to meet individuals named Maria, Victoria, and Jose Garcia in Belen, and from Belen, they were to transport the aliens to Alabama. He was to be paid $300 for each alien he smuggled. Mr. Vieyra-Vazquez also provided specifics about where the aliens were going to be dropped off and the phone numbers for Victoria Garcia and Jose Garcia.

After his indictment, Mr. Vieyra-Vazquez proceeded to trial and was convicted. He now argues that (1) the District Court violated his Confrontation Clause right by admitting at trial hearsay statements of Mr. Sanchez-Scott, who did not testify at trial; and (2) there is insufficient evidence to support the jury's verdict.

## II. DISCUSSION

### A. Confrontation Clause

At trial, Agents Herrera and Brawley testified about statements Mr. Sanchez-Scott, a non-testifying alleged co-conspirator, made to them on October 10. Specifically, Agent Brawley testified that Mr. Sanchez-Scott spoke of a white Dodge that he "was working with in the alien smuggling conspiracy." Agent Herrera testified that Mr. Sanchez-Scott said he was the "lead guy" in the group apprehended in Columbus and that he described in detail the white Dodge truck the agents ultimately located and found Mr. Vieyra-Vazquez driving. Mr. Vieyra-Vazquez now alleges, for the first time on appeal, that admission of these statements violated his Confrontation Clause rights as stated in *Crawford v. Washington*, 541 U.S. 36 (2004).

The Confrontation Clause of the Sixth Amendment prohibits admission of testimonial hearsay at trial unless the declarant is unavailable and the defendant had an earlier opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. We review de novo whether the admission of such evidence violates the accused's Sixth Amendment confrontation right. *United States v. Summers*, 414 F.3d 1287, 1298 (10th Cir. 2005). Where a Confrontation Clause objection is not preserved, we will not address the constitutional issue unless "it was plain error for the district court to fail to raise the constitutional issue sua sponte." *United States v. Solomon*, 399 F.3d 1231, 1237–38 (10th Cir. 2005). To meet the plain- error standard, Mr. Vieyra-Vazquez bears the burden to show that the District Court (1) committed error (2) that was plain and (3) that affected

- 4 -

his substantial rights. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If these conditions are met, we may exercise discretion to notice the error if (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration and quotation marks omitted).

The Government concedes that the first two prongs of the plain-error test are met. Indeed, Mr. Sanchez-Scott's statements, as related through the testifying Border Patrol agents, were offered to prove the truth of the matter asserted—that is, that Mr. Vieyra-Vazquez played a role in the conspiracy—and are therefore hearsay. *See* Fed. R. Evid. 801(c). They are also testimonial in nature. Testimonial evidence, "at a minimum," includes statements made in response to custodial interrogation. *Crawford*, 541 U.S. at 68. We have further held that a statement is testimonial if "a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *Summers*, 414 F.3d at 1302. In *Summers*, for example, we held that a suspect's question posed to law enforcement officers that implicated the declarant and others in a bank robbery was a testimonial statement subject to the rule set forth in *Crawford*.[1] Similarly, Mr. Sanchez-Scott, while in the custody of Border Patrol agents, made statements that implicated himself and Mr. Vieyra-Vazquez. The circumstances indicate that Mr. Sanchez-Scott intended to aid the agents in their investigation of the smuggling activity. Accordingly, we conclude that the statements

---

[1]Upon being arrested for bank robbery, the declarant in *Summers* asked law enforcement officers, "How did you guys find us so fast?" 414 F.3d at 1293.

- 5 -

were testimonial. Moreover, the Government did not show that Mr. Sanchez-Scott was unavailable to testify at trial, nor did Mr. Vieyra-Vazquez have an opportunity to cross-examine him. As such, we hold that it was error for the District Court to admit this testimony.

This error is also "plain." A plain error is one that is "contrary to well-settled law," meaning either the Supreme Court or this Court has addressed the issue. *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003). The Supreme Court decided *Crawford* on March 8, 2004, approximately one week before Mr. Vieyra-Vazquez's trial commenced. Because the issue was settled at the time of trial, the District Court committed plain error by admitting the statements.

Although admission of Mr. Sanchez-Scott's statements violated the rule in *Crawford*, Mr. Vieyra-Vazquez cannot show that the error affected his substantial rights. To establish that an error affected substantial rights, a defendant must show a "reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (alteration and quotation omitted). Having carefully reviewed the record, we conclude Mr. Vieyra-Vazquez has failed to establish that, but for the *Crawford* violation, the outcome of his trial would have been different.

Even without the erroneously admitted testimony, there is ample record evidence to satisfy the elements of the charged conspiracy. *See Summers*, 414 F.3d at 1303 (holding substantial evidence of guilt renders *Crawford* violation harmless beyond a

reasonable doubt); *see also United States v. Atencio*, 435 F.3d 1222, 1231 (10th Cir.

2006) (finding no effect on substantial rights where there was sufficient evidence

presented to the jury that the error would not have made a difference in the outcome);

*United States v. Corchado*, 427 F.3d 815, 818–19 (10th Cir. 2005) (same). First, there

was testimony that when Agents Garcia and Herrera apprehended Mr. Vieyra-Vazquez on

October 10, he admitted to them that he was employed by the Garcia organization. He

gave the agents specific information about the Garcia organization, including names,

phone numbers, and pick-up and drop-off locations. Although these statements could be

consistent with Mr. Vieyra-Vazquez's contention that he was merely conducting

reconnaissance and collecting general information regarding smuggling activities in his

role as a confidential informant, he also admitted that he intended to transport the aliens

to Belen, New Mexico, after which they would be transported to Alabama—conduct

which is not consistent with information gathering. *See Corchado*, 427 F.3d at 819

(noting that we will not second guess a jury's weighing of the evidence or assessment of

witness credibility). Indeed, Immigration and Customs Enforcement Agent Daniel

Carroll later testified that although he did enroll Mr. Vieyra-Vazquez as a confidential

informant to help gather intelligence against smuggling organizations—particularly the

Garcia organization—he specifically instructed Mr. Vieyra-Vazquez that his informant

status did not authorize him to commit any crimes, including smuggling aliens. Mr.

Vieyra-Vazquez admitted as much, as he testified at trial that he knew that in his role as

an informant "he shouldn't be committing any offenses." In other words, though he may

have been commissioned to explore the activities of alien smugglers, he was not permitted to participate in the smuggling.

Second, Mr. Vieyra-Vazquez's testimony at trial reinforced the Government's contention that he was not merely acting as an informant but was actively participating in the smuggling operation.[2] Mr. Vieyra-Vazquez explained that he infiltrated the Garcia organization sometime in April 2003. Approximately three days before he was arrested in Columbus, the Garcias paid him $500 to drive from Alabama to New Mexico to pick up the aliens. He was supposed to meet the group at the Catholic Church in Columbus, New Mexico, close to where the Border Patrol agents stopped him. Between the time Mr. Vieyra-Vazquez left Alabama for New Mexico and the time he was detained at the processing center, he never called Agent Carroll to reveal the existence of the pending operation. In fact, he had not had any contact at all with Agent Carroll since August of that year, although for four or five months prior to that, he called Agent Carroll every week or two.

Finally, Agent Brawley, who had worked as a Border Patrol agent for approximately twenty-two years and had intercepted hundreds of pickup trucks

---

[2]Mr. Vieyra-Vazquez argues that his motion for judgment of acquittal at the close of the Government's case should have been granted, and had it been granted, he would not have testified. Consequently, he argues, his testimony should not be considered on appeal. To the contrary, if a district court denies a motion for judgment of acquittal made at the close of the government's case-in-chief and a defendant proceeds with his case, we review the entire record on appeal. *United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

transporting illegal immigrants, testified that Mr. Vieyra-Vazquez's truck had the characteristics of a vehicle used for smuggling aliens. The rear seat and console were removed from the vehicle, allowing for transport of ten to twelve individuals. The truck had tinted windows and contained blankets, both of which smugglers use to conceal aliens. Agents also found an Alabama license plate inside the truck. Agent Carroll testified that the practice of the Garcia smuggling organization, which is a major smuggling operation based in Alabama, is to take the Alabama license plate off the vehicle used to smuggle aliens when it enters New Mexico because an Alabama license plate in New Mexico is a red flag to Border Patrol agents there.

This evidence is more than sufficient to support Mr. Vieyra-Vazquez's conviction even without the erroneous testimony; Mr. Vieyra-Vazquez has not shown a reasonable probability that exclusion of the testimony would have changed the result of the trial. Thus, the error here has not affected Mr. Vieyra-Vazquez's substantial rights, and the plain-error test is not satisfied.[3]

---

[3]Mr. Vieyra-Vazquez suggests for the first time in his reply brief that a *Crawford* error is a structural error, which requires automatic reversal. *United States v. Lott*, 433 F.3d 718, 722 (10th Cir. 2006) (structural errors "involve defects in the 'trial mechanism' and affect 'the framework within which the trial proceeds'"; such errors require automatic reversal (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309–10 (1991)). Generally, this Court does not consider arguments made for the first time in a reply brief, *United States v. Bennett*, 329 F.3d 769, 778 n.7 (10th Cir. 2003), and we decline to do so now. Even if we were to consider this argument, however, this Court has previously held that a Confrontation Clause violation is amenable to harmless error review, *see Brown v. Uphoff,* 381 F.3d 1219, 1226 (10th Cir. 2004), and therefore a *Crawford* violation is, by implication, not structural error.

B.  Sufficiency of the Evidence

We review de novo whether the Government presented sufficient evidence to support a conviction.  *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005).  In so doing, we view the facts in evidence in the light most favorable to the government.  *Id*.  We do not second guess the jury's assessment of witness credibility or weighing of the evidence.  *United States v. Beers*, 189 F.3d 1297, 1301 (10th Cir. 1999).  Rather, our role is limited to determining "whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom."  *Dunmire*, 403 F.3d at 724.

Under 8 U.S.C. § 1324(a)(1)(A)(v)(I), it is a crime for anyone to conspire with someone else to commit an offense of bringing in and transporting illegal aliens.  18 U.S.C. § 1324(a)(1)(A)(v)(I); *see also id*. at § 1324(a)(1)(A)(i), (ii).  To prove the existence of a conspiracy, the government must show: (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators.  *United States v. Small*, 423 F.3d 1164, 1182 (10th Cir. 2005).  Mr. Vieyra-Vazquez argues that there is insufficient evidence that he agreed with another to violate the law, that his participation was knowing and voluntary, and that there was interdependence among the alleged conspirators.  We disagree.

"In determining whether there was an agreement to commit an unlawful act, the critical inquiry is whether the circumstances, acts, and conduct of the parties were of such

a character that the minds of reasonable men may conclude therefrom that an unlawful agreement existed." *United States v. McCullough*, 457 F.3d 1150, 1159–60 (10th Cir. 2006) (alterations and quotation marks omitted). "[A]n agreement to violate the law may be inferred from the facts and circumstances of the case." *Id.* at 1160 (quotation marks omitted). That Mr. Vieyra-Vazquez entered into an agreement with another to violate the law is supported by Mr. Vieyra-Vazquez's statements to the Border Patrol agents and testimony at trial. In addition to evidence that he was hired by the Garcia organization to meet the group in Columbus and to bring the aliens to Belen, New Mexico, the record contains evidence that he accepted money from the Garcia organization and agreed to be paid $300 for each alien he transported. Furthermore, the characteristics of his truck and the location where he was apprehended corroborate this evidence. The same evidence also supports a finding that he knowingly and voluntarily joined in the conspiracy, as does the fact that he originally claimed he was in the area to perform construction work at a restaurant and only later revealed that he was involved with a smuggling organization. *See United States v. Johnson*, 57 F.3d 968, 972 (10th Cir. 1995) (false and misleading statements can provide a basis for inferring guilty knowledge).

Interdependence among the alleged co-conspirators "exists where each co-conspirators' activities constituted essential and integral steps toward the realization of a common, illicit goal." *Id.* at 1161. At a minimum, Mr. Vieyra-Vazquez's drive from Alabama to New Mexico as an employee of the Garcia organization facilitated the smuggling venture as a whole, allowing the jury to find interdependence. Mr. Vieyra-

Vazquez contends, however, that his trip to Columbus, New Mexico "could have been merely a gratuitous favor or isolated act among friends," *United States v. Anderson*, 981 F.2d 1560, 1565 (10th Cir. 1992), or merely evidence that he was in fact collecting information regarding the Garcias' alien smuggling activities. This contention is belied by the facts. Mr. Vieyra-Vazquez had already been paid $500 for the trip, and he admitted that he was going to transport the aliens to Belen. Moreover, his truck was equipped for the journey, and he did not contact Agent Carroll to reveal the existence of the scheme until after he was arrested.

Ample evidence in the record provides sufficient support for the jury's verdict, and we will not disturb it.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge