**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

IRA BURDELL WAKEFIELD,

Defendant-Appellant.

No. 09-4133
(D.C. No. 2:08-CR-00156-TS-2)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

Mr. Wakefield appeals from his conviction for one count of aiding and abetting a bank robbery in violation of 18 U.S.C. §§ 2 and 2113(a), (d). He was sentenced to 110 months' imprisonment. On appeal, he argues that the evidence presented at trial was insufficient to sustain his conviction. We affirm.

At 9:59 a.m., March 4, 2008, Mr. Wakefield went to a Lindon, Utah Wal-Mart to purchase a BB gun. A Wal-Mart security officer observed him in the

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with the terms and conditions of Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

store's video surveillance camera wearing a ponytail and long hair on the side. Approximately one hour and forty-five minutes later, an armed robber robbed the Utah First Credit Union in Provo, Utah. The robber approached a bank teller, gave her a note identifying himself as a robber, and lifted his shirt to reveal a black gun in his waistband. The teller activated an alarm underneath her counter before giving the robber U.S. currency containing a dye pack. After the robber left the bank, the dye packs began to explode. Outside, a white male with "light hair, long hair" waited in the driver's seat of a white van. Rec., vol. II at 43. A witness observed the van idling on the side of the road, until a white male ran to the van and jumped into the passenger seat. The van immediately drove off.

One hour later, a highway patrol officer received a request to locate "two armed robbery suspects driving a white newer model minivan with a black stripe down the side." *Id.* at 68. A few minutes later, he observed such a vehicle with two males in the front seats. The officer began to follow the van, which "suddenly veered off the road across the oncoming lane of traffic and went into a view area and came to a sudden stop." *Id.* Following the van into the viewing area, the officer saw Mr. Wakefield exit the vehicle and open the passenger door. Believing Mr. Wakefield was "going for a weapon," *id.* at 72, the officer activated his emergency lights, exited his vehicle and drew his firearm. He ordered Mr. Wakefield and the passenger out of the vehicle and patted them down for weapons.

The officer then inquired whether there was a weapon in the vehicle. Both Mr. Wakefield and his passenger initially denied the presence of any weapons, but Mr. Wakefield subsequently admitted there was a BB pistol in the back of the vehicle. Another officer arrived on the scene and conducted a search of the passenger's person. In the passenger's pants pocket, he uncovered several one-hundred dollar bills containing fresh red dye. Both Mr. Wakefield and his passenger were arrested.

After Mr. Wakefield was booked, detectives obtained the phone records associated with his cell phone. The records "indicated that that cell phone that Ira Wakefield claimed to be his . . . followed the pattern of the course of action during this bank robbery, the time frame on the bank robbery, vehicle being stopped in Helper, pretty much exactly." Rec., vol. II at 146-47.

Mr. Wakefield was tried for armed robbery and for aiding and abetting a bank robbery. At the close of evidence, he moved for a judgment of acquittal pursuant Fed. R. Crim. P. 29, which the district court denied. The jury convicted him of aiding and abetting the robbery.

On appeal, Mr. Wakefield contends the prosecution's evidence was insufficient to sustain his conviction. We review sufficiency of the evidence *de novo*, viewing the facts in evidence in the light most favorable to the government. *United States v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005). We do not reweigh the evidence nor do we second guess the factfinder's credibility

determinations. *United States v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995). Rather, we inquire into "whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *United States v. Smith*, 133 F.3d 737, 741-42 (10th Cir. 1997).

In *United States v. Summers*, 414 F.3d 1287 (10th Cir. 2005), we articulated the requisite elements of an aiding and abetting conviction. Specifically, we stated that the prosecution must prove beyond a reasonable doubt that the charged defendant "(1) willfully associated with the charged criminal venture and (2) aided the venture through affirmative action." *Id*. at 1295. Such a conviction "must be grounded on more than a suspicion of guilt . . . [and] cannot be sustained if obtained by piling inference on inference." *Id*. at 1294 (internal quotations and citations omitted). Mr. Wakefield invokes our decision in *Summers* to argue that "the gap between the facts of the appellant being at the store and purchasing the BB gun and the conclusion that the gun was used in the robbery and that appellant was the getaway driver is far too wide to uphold the appellant's conviction." Aplt. Br. at 18.

Although the principles we announced in *Summers* guide our analysis, the instant case does not present the evidentiary gap that compelled our reversal of the conviction in that case. There are some initial factual similarities: Mr. Summers was a defendant convicted for, *inter alia*, aiding and abetting a bank

robbery, in violation of 18 U.S.C. §§ 2 and 2113(a), (d). The getaway car was identified by law enforcement officers and pulled over. The passengers of the vehicle included the bank robbers and the defendant, Mr. Summers. At the criminal trial, the prosecution "advanced the theory that Mr. Summers acted as a getaway driver at the bank [robbery]." *Summers,* 414 F.3d at 1295. However, the prosecution in *Summers* failed to present any witness who could place Mr. Summers at the scene of the robbery. *Id.* The arresting officers failed to uncover any evidence of the bank robbery on Mr. Summers' person. Indeed the only evidence in that case linking him to the crimes charged was his presence later that day in the car used in the robbery. "Absent any evidence tying Mr. Summers to the [car at the time of the getaway] or [otherwise] establishing his presence with the bank robbers," we concluded that "the probability that Mr. Summers acted as a getaway driver does not appear reasonable." *Id. at* 1296.

In this case, the prosecution proved more than Mr. Wakefield's presence in the getaway car to secure his conviction. On the day of the offense, Mr. Wakefield purchased at a nearby Wal-Mart a BB gun resembling the firearm used in the robbery. He left the Wal-Mart one hour and forty-five minutes before the robbery took place in the same white minivan that was used in the robbery. Cell phone records placed Mr. Wakefield near the scene of the crime at the time of the robbery. Mr. Wakefield matched the description an eyewitness gave of the getaway driver. Mr. Wakefield was driving the getaway vehicle shortly after the

robbery, when the vehicle was stopped by the police.  This constitutes sufficient evidence linking Mr. Wakefield to the bank robbery to support his conviction.

Our conclusion is supported by our decision in *United States v. Davis*, 437 F.3d 989 (10th Cir. 2006).  In *Davis*, we addressed a defendant's contention that there was insufficient evidence to support his conviction for aiding and abetting an attempted armed bank robbery, in violation of 18 U.S.C. §§ 2 and 2113(a).  Much like the defendant here, Mr. Davis invoked our decision in *Summers* to support his argument.  After reviewing the record, however, we said his argument "borders on being frivolous." *Davis*, 437 F.3d at 994.  At Mr. Davis's trial, two eyewitnesses placed the defendant at the scene of the offense.  In addition, the prosecution submitted phone records and DNA evidence connecting Mr. Davis to a do-rag found near the credit union to corroborate the prosecution's theory of the case. *See id.* at 994-95.  Given the "strong evidence establishing that Davis was [an] accomplice," *see id.* at 994, we affirmed.  As in *Davis*, there is ample evidence in this case connecting Mr. Wakefield to the robbery.

We **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Circuit Judge

-6-